Charles Schwab Corp. v Goldman Sachs Group, Inc. (2020 NY Slip Op 04520)





Charles Schwab Corp. v Goldman Sachs Group, Inc.


2020 NY Slip Op 04520


Decided on August 13, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 13, 2020

Gische, J.P., Kapnick, Webber, Kern, González, JJ.


11832 654674/18

[*1] The Charles Schwab Corporation, et al., Plaintiffs-Appellants,
v
The Goldman Sachs Group, Inc., et al., Defendants-Respondents.


Friedman Kaplan Seiler & Adelman LLP, New York (Robert S. Smith of counsel), for The Charles Schwab Corporation and Charles Schwab & Co., Inc., appellants.
Kaplan Rice LLP, New York (Howard J. Kaplan of counsel), for TD Ameritrade Holding Corporation, TD Ameritrade Online Holdings Corporation and TD Ameritrade, Inc., appellants.
Cleary Gottlieb Steen & Hamilton LLP, New York (Thomas J. Moloney of counsel), for respondents.



Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered June 21, 2019, which granted defendants' motion to dismiss the complaint, unanimously reversed, on the law, with costs, and the amended complaint reinstated.
In 1999, plaintiffs, a number of retail brokerage firms, established Epoch, an online investment bank company. Plaintiffs established Epoch in an effort to facilitate the sale of newly-issued securities directly to their customers. Epoch had a distribution agreement with plaintiffs, providing that plaintiffs and their retail customers would be able to participate in Epoch's securities offerings. This distribution agreement did not have a set term, but was terminable upon the happening of certain events that included a change in control in any of the plaintiffs.
The Goldman Sachs Group, Inc. and Goldman Sachs & Co. LLC (together, Goldman) acquired Epoch from plaintiffs in 2001. Goldman contends that it believed it was investing in a "potentially very valuable new distribution mechanism" for the online sale of securities, and paid $192 million to purchase it. In a 2001 press release, Goldman explained that through the acquisition it would "obtain the exclusive right to distribute equity offerings, including IPOs [initial public offerings], to [plaintiffs]' customers," and that those customers would "receive access to U.S. equity research from Goldman []." The press release noted that plaintiffs had nearly 10 million active accounts and approximately $1 trillion in customer assets. Finally, it summarized that Epoch would provide "exclusive access" to the "important individual investor segment through one of the largest brokerage networks in the United States."
At the time of the acquisition, Goldman and plaintiffs negotiated changes to Epoch's original distribution agreement, which led to the Amended and Restated Distribution Agreement being executed by plaintiffs, Goldman and Epoch on June 12, 2001 (the distribution agreement). The distribution agreement provided, among other things, that Goldman would "invite through Epoch each of the [plaintiffs] to participate in Offerings on the terms set forth herein." The agreement provided for the allocation to plaintiffs of 15% of Goldman's "Fee Retention" in oversubscribed public offerings, among other things.
It is undisputed that the distribution agreement had no expiration date. Goldman also entered into several other agreements with some of the plaintiffs at the time of the acquisition. While the distribution agreement provided for an "Exclusive Period" during which the parties were bound to work together, this exclusivity period expired on December 15, 2007. Goldman claims that it attempted on numerous occasions to reach a consensual termination of the [*2]distribution agreement starting as early as March of 2008, but that no consensual agreement could be reached. The distribution agreement has thus essentially operated as a one-way "option" contract in plaintiffs' favor since 2007.
According to the complaint, Goldman continued to benefit from Epoch, even after the exclusive period expired, in light of the access it granted to individual investors interested in IPOs and secondary public offerings (SPOs). Plaintiffs contend that Goldman was able to promote access to such investors when competing for appointments as lead managing underwriter on IPOs and SPOs, and received a higher dealer concession than it otherwise would have in light of its ability to guarantee allocations. Further, when an offering was undersubscribed, the purchases from plaintiffs' customers helped Goldman to fill the inventory of shares to be issued. They contend that orders from their customers increased the likelihood that the offering would become oversubscribed, thus allowing Goldman to invoke an over-allotment option to earn additional fees.
In or around 2013, Goldman moved its distribution of IPO shares in-house to its own investment banking arm, rather than continuing to do so through Epoch. At that time, Goldman repurposed Epoch as an underwriter for its insurance and reinsurance businesses and sold the system as part of a spin-off. Plaintiffs contend that Goldman has never claimed that this event affected its obligations under the distribution agreement. In February of 2013, Goldman, Epoch and plaintiffs executed an Assignment, Assumption and Release Agreement (the assignment agreement) through which Goldman reaffirmed the distribution agreement. In April 2018, Goldman's counsel sent plaintiffs a letter stating that it was providing 90 days notice of Goldman's termination of the distribution agreement.
Plaintiffs commenced this action through the filing and serving of a summons and complaint and a proposed order to show cause requesting an application for a preliminary injunction and a temporary restraining order (TRO). The court denied the TRO and declined to hear argument on the preliminary injunction finding, inter alia, that the distribution agreement had no term of duration and was not a contract in perpetuity. With the denial, Goldman discontinued allocating shares to plaintiffs under the distribution agreement.
Plaintiffs filed a first amended complaint shortly thereafter, alleging breach of contract and an additional claim for declaratory judgment and specific performance. The amended complaint continued to allege that the distribution agreement should last for so long as Goldman was a lead underwriter and bookrunner. In October of 2018, Goldman moved to dismiss, pursuant to CPLR 3211(a)(1) and (a)(7), arguing that (1) because "distribution" agreements with no specified term are "terminable at will" Goldman was entitled to terminate the agreement, and (2) even if the distribution agreement was not so, it continued, at most, for a reasonable term that had long since passed after Goldman stopped receiving a mutual contractual benefit.
The court rejected plaintiffs' allegations of continued benefit to Goldman, finding that the "alleged benefit is merely access to customers, and thus, the ability to sell more shares." It found that the distribution agreement had expired after a reasonable term, at latest when the court denied the motion for a TRO and preliminary injunction in September of 2018.
Plaintiffs contend that the order appealed from should be reversed and the amended complaint reinstated. We agree.
The motion court incorrectly determined as a matter of law that the distribution agreement at issue, which was silent as to duration and had provided defendants with no meaningful contractual benefits since 2007, had continued for a "reasonable time" (Haines v City of New York, 41 NY2d 769, 772 [1977]) and that therefore it was properly terminated by defendants. It incorrectly concluded that it would be "unreasonable for a one-way option to persist so many years after a significant benefit accrues to the defendants."
In Haines, New York City agreed to construct and maintain a sewage disposal plant in an area where a reservoir from which the city received water was located. The agreement, entered into in 1924, was prompted by health and safety concerns, namely the city's "need and desire to prevent the discharge of untreated sewage" into a nearby creek that fed the reservoir (id. at 770). The agreement did not set a time limit for the city's maintenance obligation. An action was brought against the city in the mid-seventies, some fifty years after the agreement was entered [*3]into, and despite the lengthy passage of time the Court of Appeals held that the agreement was still enforceable.
The Haines Court rejected both the plaintiff's argument that the agreement's silence as to duration rendered it a perpetual contract, as well as the city's argument that the agreement was terminable at will. Instead, the Court held that, as a general rule, a contract that is silent as to duration will continue for a "reasonable time" (id. at 772). The Court further noted that in the absence of an express duration period, courts "may" inquire into the intent of the parties in order to supply the missing term if it may be "fairly and reasonably fixed by the surrounding circumstances and the parties' intent."
Here, Supreme Court failed to examine the surrounding circumstances as well as the intent of the parties in discerning the original intent of the parties (Haines at 772). It improperly determined, as a matter of law, that a "reasonable time" justifying termination of the contract had elapsed and plaintiffs had not made any persuasive arguments to the contrary. In doing so, it relied upon its conclusion that Goldman was no longer receiving a meaningful benefit from the agreement, thus rejecting out of hand plaintiff's allegations in the amended complaint to the contrary.
As this is a motion to dismiss pursuant to CPLR 3211(a)(7), Supreme Court should have afforded the pleadings a liberal construction (see CPLR 3026), taken the allegations of the complaint as true, and afforded plaintiff[s] the benefit of every possible favorable inference. A motion court must only determine whether the facts as alleged fit within any cognizable legal theory (see Leon v Martinez, 84 NY2d 83, 87—88 [1994]). Whether a plaintiff can ultimately establish its allegations should not be considered in determining a motion to dismiss (see E.C. I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). "Under CPLR 3211(a)(1), a dismissal is warranted only if the documentary
evidence submitted conclusively establishes a defense to the asserted claims as a matter of law" (Leon, 84 NY2d at 88).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 13, 2020
CLERK